ling before his eyes; that he went and spoke to the doctor, told the doctor that he did not feel well, had been up all night with dysentery and had had no sleep, and asked the doctor to give him something; that the doctor told him to go down and take a milk punch and put an egg in it, which he did; that he lay down on the sofa about twenty minutes, got up and had another milk punch with an egg in it, made for him by his mother; that at one o'clock he was at the station house with the rest of the men, stood in line and answered to his name, did not feel at all intoxicated at that time, but simply felt weak; that he went out with the rest of the men and took a car down Broadway and got of at Twenty-third street, met his relief, and stood talking on the corner of Twenty-third street and Fourth avenue; that he stood talking with the officer and the switchman, walked up the avenue to make a trip over his post, feeling very weak, but he seemed to get better as he went along; went as far as Twenty-seventh street, taking the side streets to Madison avenue; that he there met the roundsman who had been sent for him; that he then felt sick and weak from his disease, but no worse than he had felt before he left the station house, except that he felt a dizziness in his head; that he stood in the shade, thinking that the sun had affected him, and he had not been standing ten minutes when the roundsman came and told him that he was wanted at the eighteenth precinct station house. Now, taking this testimony together, we do not think that there was sufficient evidence to justify a conviction of intoxication. The only evidence as to the relator's taking any intoxicants at all is his own statement that he took two milk punches. This he took upon the advice of his doctor as medicine, and all the symptoms that were noticed by the surgeon or the other officers could, with as much reason, be attributed to the disease, and to walking in the hot sun in his then condition, as to the effect of the milk punches which he had taken. There was no evidence to show that the relator was in the habit of drinking. On the contrary, the testimony is that he was a sober man. This was the first charge that he had had preferred against him for intoxication, and the officer's whole trouble seems to have been occasioned by his reluctance to report that he was sick, and his endeavor to perform his duty when his physical condition was such that he should have kept quiet. We fully recognize the rule that where an officer is shown to have violated the regulations of the police department, his excuse is a matter solely for the commissioners to determine, and with its sufficiency we have nothing to do, but in this case, where all of the symptoms from which intoxication could be inferred, could have been caused by a disease from which the undisputed evidence shows the relator was then suffering, and where it appears that all the liquor that the relator took was that prescribed for him by his physician as medicine for the disease, and that the amount was so small that it could hardly have intoxicated a healthy person; we do not think that the evidence justifies a finding that the relator was intoxicated, or unfit for police duty from the influence of intoxicating liquor. We think, therefore, that the proceedings of the respondents must be annulled and the relator reinstated, with fifty dollars costs and disbursements of this application. Van Brunt, P. J., Rumsey and Williams, JJ., concurred. The People of the State of New York ex rel. John Walsh, Relator, v Theodore Roosevelt and Others, Respondents.—Proceedings annulled and relator reinstated, with costs.—

Certiorari to review dismissal of relator from the police force.—

VAN BRUNT, P. J. : The evidence in this case is very short, and the trial seems to have been entirely informal. Witnesses do not seem to have been sworn, and appear simply to have given their statements before the commissioners. Patrolman McConnell stated that he was sent to bring the police commissioners of Trenton around through the city and they went down to Chinatown, and in Doyer street he saw an officer in uniform (the witness Hart) talking to a man in citizen's clothes; that he went over to him and asked him if he knew any place worth seeing; that he told him who the gentlemen were that were with him; the officer informed him that he was a stranger there, but would send to the corner to see if the wardman was there; that he stepped aside and the relator came up to him and said, "You are Officer McConnell from Central office and those people with you are police commissioners of Trenton?" McConnell answered, "Yes," and the relator said, "You are a God damn liar and no gentleman." McConnell states that he did not know who the relator was; that the relator started towards him and the officer in uniform stepped in between and told relator to go and mind his own business. Patrolman Hart was then called as a witness, and he stated that he was present at the time, and in answer to the question, "What conversation did you hear?" he answered, "I saw this officer coming down in citizen's clothes with a party of gentlemen. This gentleman, Officer Walsh, was standing there in citizen's clothes and I asked him who this party was coming down Pell street and he said he thought they were sightseers, and as the party passed this officer here in citizen's clothes (McConnell) came back and spoke to me and asked me who this man was and I told him he was an officer, and this officer (McConnell) said, 'I am from Inspector Brooks' office and this is the Board of Police Commissioners of Trenton,' something like that; he didn't express it properly, and this Officer Walsh said, 'The Board of Commissioners of Police Commissioners of Trenton,' and this Officer McConnell, evidently thinking he repeated it after him, because he didn't express it correctly, said, 'Now, as you are so smart' or 'damn smart,' I don't know which he used, he said 'We don't want your assistance at all.' So Officer Walsh spoke up then, and I forget what he said, but he got excited, and later on I heard him say Officer McConnell was no gentleman, and I told Officer McConnell to come with me to the Bowery as I was not acquainted, and we would find the wardman. We went and I could not find the special officer, and in coming back I told Officer McConnell to take the party into No. 12. * * * So they went to No. 12, where this officer was stationed, and Officer McConnell came to me and said, 'I don't want that man following me up.' I said, 'It is his special post, he is stationed there,' and with that Officer Walsh came out and said, 'You are no gentleman to use that language,' and he became very excited, and I told him to go away and Officer Walsh said, 'Hart, you ought to patrol your post,' and I said, 'Walsh, you attend to your business and I will attend to mine.'" The relator was then examined and said, "I did not insult the men at all." When asked the question "What did you say to him?" he answered, "This man came along with this party and I asked him who they were and I said, sightseers? and he said, 'I don't want any of your assistance at all.' He turned to me and said, 'I will put you in uniform and I will transfer you,' which he did already and he turned

around and said, 'I will give you a punch in the God damn mouth,' and I said, 'You are no gentleman to use that language to me.'" The testimony upon the part of Officer Mc-Connell is absolutely incredible. There is no motive shown nor any reason whatever given for the exclamation which Officer Mc-Connell states as having been made by the relator. Officer Hart, an impartial witness, gives an entirely different version of the transaction. It is true that it is sought to impair his testimony by a statement that he had said something different at the station house; but no evidence of the fact was attempted to be given. The relator's statement does not entirely agree with the version given by Hart, but in the main they concur, and they certainly establish the fact that Officer McConnell's account of the transaction is entirely incorrect. It is impossible to come to the conclusion that the relator, without any provocation or any previous conversation with McConnell, for no reason whatever, should use the language imputed to him. I am of opinion that the charge was not sustained by any evidence entitled to belief and that the proceedings should be annulled, and the relator reinstated, with costs. Rumsey, Williams and Ingraham, JJ., concurred.

Elizabeth S. Van Beuren and Others, Respondents, v. Frances A. Wotherspoon and Others, Appellants.— Judgment affirmed, with costs. — Appeal by defendants from final judgment in favor of plaintiffs, entered by direction of the court on confirmation of the referee's report pursuant to the order made by the Appellate Division. —
PER CURIAM : The referee followed strictly the directions contained in the order made by the Appellate Division. The value of the lot, without the buildings, was fixed at $100,000, and the value of the buildings at $15,100. The principle upon which these valuations were made was correct. We cannot assent to the correctness of the views expressed by the appellants' counsel upon this subject. The value of the use and occupation of the premises from the time of the expiration of the lease was fixed at $9,000 per year, which was precisely the amount of rent received by the defendants from their lessees. The judgment should be affirmed, with costs. Present — Van Brunt, P. J., Williams, Patterson, O'Brien and Ingraham. JJ.

Elizabeth S. Van Beuren and Others, Respondents, v. Sarah Lazarus and Others, Appellants.— Judgment affirmed, with costs.— Appeal by defendants from final judgment in favor of plaintiffs, entered by direction of the court upon confirmation of the referee's report, pursuant to the order made by the Appellate Division.—
PER CURIAM : Judgment affirmed, with costs, upon memorandum in *Van Beuren* v. *Wotherspoon,* decided at present term. (See preceding case.) Present— Van Brunt, P. J., Williams, Patterson, O'Brien and Ingraham, JJ.

George Weber, Respondent, v. The Metropolitan Street Railway Company, Appellant.— Judgment and order affirmed, with costs.— Appeal from judgment entered on verdict and from order denying motion for new trial.—
PATTERSON, J. : The judgment in this case should be affirmed. The plaintiff was a passenger riding on the platform of the defendant's car, where he went by invitation of the conductor and where he had a right to be. He did nothing to contribute to the accident which caused the injuries from which he suffered. That accident occurred by the collision of a horse car with a coal cart. The

coal cart was standing on the sidewalk, the horse attached to it being partly on the sidewalk and partly in the street; there was a space of about four feet between the southerly rail of the track and the curbstone. When the body of the car was within some nine or ten feet of the cart, the driver of the car saw the horse attached to the coal cart make a movement as if to bite at the car horse nearest him, the car itself being at that time about ten feet away from the head of the cart horse, but the car horses being near the cart horse. The movement of the cart horse caused the coal cart to begin to slip down; the car driver at once applied his brake, but it would not hold, and his car was projected with violence against the wheel of the cart; the plaintiff's hand was caught between the wheel and some part of the body of the car, and one of his fingers was torn off. There does not seem to have been any negligence of the driver; he had room to pass had not the movement of the cart horse taken place, and he had no reason to anticipate that movement or the descent of the coal cart; but there was evidence that the car could have been stopped or its rate of speed diminished had the braking apparatus been in proper order. The brake did not work. The evidence is uncontradicted that the car could have been stopped in eight or nine feet at the rate at which it was going at that time. The driver so testified, and he also testified that very brake, on the same car, had, on former occasions, failed to respond when power was applied to it. On this occasion it did not stop the car, with the full force of the driver put upon it, until it had proceeded from twenty-five to twenty-eight feet beyond the coal cart. The driver swore that the brake had been out of order for more than a month, and that he had no less than four times reported it to the starter. It appears in evidence that the starter was the proper person to whom to make reports. There is no evidence whatever to contradict that of the driver respecting the condition of the brake, and there was enough to go to the jury on that subject in support of the particular allegation of the complaint that the accident was caused by the use of a defective brake. There was a strong attack made at the trial on the credibility of this driver, the principal witness for the plaintiff, but the jury believed him. The other exceptions are not of sufficient importance to justify an interference with the verdict, nor was the amount of that verdict excessive. The judgment and order appealed from should be affirmed, with costs.— Rumsey and O'Brien, JJ., concurred. Van Brunt, P. J., and Ingraham, J., dissented.
VAN BRUNT, P. J. (dissenting) : I dissent. There is no credible evidence that the car could have been stopped in time to avoid collision. The driver says the car could be stopped in four or five feet. This is upon its face untrue. Going at the usual rate it takes. but half a second to go five feet (*Fenton* v. *Second Avenue Railroad Co.,* 126 N. Y. 625), a time not only manifestly insufficient to stop the car, but even to set the brake. Ingraham, J., concurred.

William W. Mayer v. Edward M. Stern. In the Matter of the Petition of Henry J. Weixelbaum to Compel the Receiver to Pay His Wages, etc., Appellant.— Order reversed, with ten dollars costs and disbursements, and matter remitted to the court below for rehearing.—Appeal from order denying the petitioner's application to require the receiver to pay his wages, etc.
PER CURIAM : The case of *Palmer* v. *Van-Santvoord* (153 N. Y. 612) seems to hold that the appellant is an employee within the stat-